## UNITED STATES ex rel. HUMPHRIES v. HUNT, Warden.

### No. 1883–A.

District Court, W. D. New York.
July 31, 1936.

Nat J. Humphries, alias James Brown, in pro. per.

John J. Bennett, Jr., Atty. Gen. of New York, and Charles Kennedy, Asst. Atty. Gen., for respondent.

RIPPEY, District Judge.

Invoking the aid of this court by way of habeas corpus under the provisions of section 753 of the Revised Statutes of the United States (28 U.S.C.A. § 453), the petitioner seeks his release from Attica State Prison on the sole ground that the rendition proceedings under which he was brought from the state of Kansas into the state of New York were not in conformity with the provisions of section 5278 of the Revised Statutes of the United States (18 U.S.C.A. § 662), enacted to give effect to article 4, section 2, of the Constitution.

The record in the case shows that the petitioner was indicted, tried, and convicted in the Court of General Sessions, New York County, New York, on a charge of attempted burglary in the second degree as a second offender and was sentenced on September 25, 1913, to a term of nine years and three months in Sing Sing State Prison. On September 25, 1917, the Governor of the State of New York commuted his sentence to a minimum term of five years and a maximum term of nine years and three months without compensation. The commutation was granted upon the sole condition that if he should thereafter be convicted of any felony committed during the period of time between the date of his discharge by reason of the commutation and the date of the expiration of the full term thereby commuted, he should be deemed an escaped convict with respect to said commuted term, and, in addition to the penalty which might be imposed for the felony committed during the interval aforesaid, he should be compelled to serve in the prison or penitentiary within which he might then be confined for such felony, or, if not confined therefor in any prison or penitentiary, then in the Auburn Prison, the portion of the term commuted remaining unserved, without deduction or commutation for good behavior.

After commencement of the service of his sentence in Sing Sing Prison, the petitioner was transferred to Auburn Prison, and on September 30, 1918, was paroled by the New York State Board of Parole to Colonel E. J. Parker of New York City. Subsequently the petitioner went to the state of Pennsylvania by permission. The parole extended to December 25, 1922, which was the date of expiration of his maximum sentence, or to the date of his previous absolute discharge by the Board of Parole for State Prisons. The parole was granted on the condition, among other things, that the petitioner should report to the Superintendent of State Prisons on the first day of each month during such parole for the month preceding upon a blank signed by the petitioner and also by his employer or the person to whom he was paroled. The certificate of parole provided that a violation of that condition should constitute a violation of his parole and make him subject to re-arrest and return to prison. To this, the petitioner agreed. The minutes of the Board of Parole of Auburn Prison under date of February 27, 1919, indicate that he theretofore violated the parole by failure to report, that he was declared delinquent, and that a warrant was issued for his return as a parole violator.

On October 27, 1919, the petitioner was convicted in the city of Philadelphia, Pa., for the crime of burglary and was sentenced for from one to two and one-half years in prison. On March 1, 1921, he was convicted of "receiving stolen goods" in the city of Pittsburgh, Pa., and thereupon sentenced to serve a term of from two years and six months to three years in prison.

On September 8, 1924, the said warrant not having yet been served upon the petitioner as a parole violator, he was convicted in the United States District Court in Cleveland, Ohio, on a charge of robbery and safe-breaking and was sentenced to serve a term of fifteen years in a federal penitentiary, whereupon he was committed to the United States Penitentiary at Leavenworth, Kan. His sentence there ex-

pired through time allowance on October 18, 1934. It is asserted that the warrant of the Board of Parole for violation of parole in the state of New York had previously been forwarded to the prison authorities at Leavenworth Prison. This warrant has not been produced in this proceeding. On October 17, 1934, the Governor of the State of Kansas issued a warrant for the arrest of the petitioner and for his delivery to the authorities of New York State on the ground that he was a fugitive from justice. The petitioner had been given no notice that he was wanted by the New York State authorities until two days previous to his discharge and was not represented at the hearing before the Governor. After the warrant was issued by the Governor, petitioner sued out a writ of habeas corpus in the probate court. The record is not clear as to exactly what happened at that time, but the petitioner asserted here, and it is not denied, that he was removed from the state of Kansas into Kansas City, Mo., where he remained in jail overnight, whereupon he was taken to Buffalo and lodged in jail on December 9, 1934, and kept there under instructions that he should not be allowed to be interviewed, and on December 10th was removed to Attica Prison. All proceedings in connection with his removal from the state of Kansas were handled by Sanford Ulrich, one of the investigators of the Division of Parole of the Executive Department of the State of New York. He acted solely on the authority of the warrant issued by the Board of Parole. No record of any of the proceedings in connection with his removal from the state of Kansas has been produced on this hearing except the warrant of the Governor.

■ Whether he was in fact a fugitive from justice was for the determination of the Governor of Kansas. The warrant of arrest signed by the Governor of Kansas in evidence here is conclusive against petitioner unless he has shown it to be without foundation. Hogan v. O'Neill, 255 U. S. 52, 41 S.Ct. 222, 65 L.Ed. 497; Roberts v. Reilly, 116 U.S. 80, 6 S.Ct. 291, 29 L.Ed. 544. The petitioner asserts, and it is here admitted, that there was no request from the Governor of New York after the production of an indictment or an affidavit made before a magistrate to the Governor of Kansas for his rendition.

This was required by the provisions of section 5278 of the Revised Statutes (18 U.S. C.A. § 662). It affirmatively appears that the only authority upon which the Governor of Kansas presumed to act was the warrant of the New York State Parole Board based on petitioner's violation of its rule as to monthly reports. In a case such as this, the federal courts take notice of the laws of the demanding state. Hogan v. O'Neill, supra. Under the laws of New York then in force, the authority presented to the Governor of Kansas was no authority at all. 18 U.S.C.A. § 662; Code Cr.Proc.N.Y. §§ 696, 697, 698 (as added by Laws 1894, c. 392, as amended by Laws 1895, c. 880); People ex rel. Atkins v. Jennings, 222 App.Div. 97, 225 N.Y.S. 72, affirmed 248 N.Y. 46, 161 N.E. 326. The Governor of New York State had the power to attach such conditions to the commutation as he saw fit. He attached the single condition above mentioned. He did not attach the condition that the petitioner should be required to report to the Board of Parole of State Prisons or that he should be subject to any of the rules or regulations of that board. If the petitioner was an escaped convict in the eyes of the law because he had violated the condition of his commutation imposed by the Governor, the Parole Board had no power to change the condition imposed in the Governor's commutation or to add any conditions of its own. Thus, in the absence of authority for his detention other than the warrant in the rendition proceedings, in habeas corpus proceedings instituted in the courts of the state of New York the petitioner would, on the record here presented, doubtless be entitled to his discharge. People ex rel. Atkins v. Jennings, supra. Having promised to abide by the directions of the Parole Board, the detention of petitioner might be valid. People ex rel. Ross v. Lawes, 242 App. Div. 638, 271 N.Y.S. 169. But this consideration has no bearing on the question of the validity of his extradition.

■ Where the petitioner comes into court on a writ of habeas corpus granted on his own application, he submits to the court the whole question of his right to a discharge or of his liability to a recommitment, and this is true whether the proceeding is brought before or after the expiration of the maximum term for which he was sentenced. People ex rel. Atkins v.

Jennings, supra; People ex rel. Brackett v. Kaiser, 209 App.Div. 722, 205 N.Y.S. 317.

The respondent asserts that either of the two convictions in Pennsylvania for felony was a violation of the condition of the Governor's commutation. Upon that question, the petitioner has had no hearing in New York State. Had the state proceeded to recommit the petitioner for the unexpired term of his sentence on account of his violation of the conditional commutation, the statute required that he be brought before a magistrate on a warrant issued on a complaint and given an opportunity to show cause why his commutation should not be adjudged void and why he should not be reimprisoned and, if there were any material fact in issue, the petitioner would then have been entitled to a jury trial (Code Cr.Proc.N.Y. §§ 696, 697). Failure to follow this procedure, however, is no ground for his discharge if it now appears that he should be required to serve out the unexpired portion of his maximum term of imprisonment for violation of the condition of his commutation (People ex rel. Atkins v. Jennings, supra), or for violation of the condition imposed by the Parole Board to which he expressly agreed (People ex rel. Ross v. Lawes, supra; People ex rel. Cecere v. Jennings, 250 N.Y. 239, 165 N.E. 277). If the question of the petitioner's right to discharge rested only on the question of his violation of the condition of commutation and if the matter were up for decision here on that point alone, his discharge would be imperative because the return does not allege, nor the proofs show, that the crimes for which he was convicted in Pennsylvania were felonies within the meaning of the laws of the state of New York. An identical situation existed in the case of People ex rel. Atkins v. Jennings, supra, where it is said at page 52 of 248 N.Y., 161 N.E. 326, 328: "If the offense for which relator was convicted would be cognizable by our laws as a misdemeanor or not at all, it cannot be included in the standard of crime that the Governor had in mind when the sentence was commuted. The record

before us is a blank on the subject. We do not know the nature of the offense for which relator was convicted, and we do not know that the acts constituting such offense would be a felony if done in New York."

The crimes of "burglary" and "receiving stolen goods" are felonies under the laws of Pennsylvania (Purdon's Penn.Statutes Annotated, title 18, §§ 3041, 3042, 2861), while the former crime might be a misdemeanor in New York according to the circumstances and conditions under which the crime was committed (sections 400–405 of the Penal Law of the State of New York), and whether the latter would be a felony depends on elements in the New York statutes (Penal Law, § 1308) not contained in the Pennsylvania statutes.

It was only because of the insistence of the petitioner that exceptional circumstances existed requiring attention of this court that the order for the writ was granted and the writ issued. The petitioner cannot be discharged here because the method by which his personal presence in New York State was secured, possibly, violated the provisions of article 4, section 2, of the United States Constitution or section 662 of the Criminal Code (18 U.S. C.A.) relating to rendition proceedings (Pettibone v. Nichols, 203 U.S. 192, 27 S. Ct. 111, 51 L.Ed. 148, 7 Ann.Cas. 1047; Ker v. Illinois, 119 U.S. 436, 7 S.Ct. 225, 30 L. Ed. 421; Cook v. Hart, 146 U.S. 183, 13 S.Ct. 40, 36 L.Ed. 934; Mahon v. Justice, 127 U.S. 700, 8 S.Ct. 1204, 32 L.Ed. 283), nor because there may have been error in the proceedings within the state under which he is detained (New York v. Eno, 155 U.S. 89, 15 S.Ct. 30, 39 L.Ed. 80; Andrews v. Swartz, 156 U.S. 272, 15 S.Ct. 389, 39 L.Ed. 422). He is now in New York State and its courts have jurisdiction to determine his status. The case presents no exceptional circumstances nor urgency such as to require intervention here.

The writ must be quashed and the application of the relator denied. It is so ordered.